UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRENDA NOEMI TORRES-MARTINEZ, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 3:16-cv-30016-KAR |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant | ) |

MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION FOR JUDGMENT
ON THE PLEADINGS AND DEFENDANT'S MOTION TO AFFIRM THE DECISION OF
THE COMMISSIONER
(Dkt. Nos. 18 & 26)

ROBERTSON, U.S.M.J.

Before the court is an action for judicial review of a final decision by the Acting

Commissioner of the Social Security Administration ("Commissioner") regarding an individual's

entitlement to Social Security Disability Insurance Benefits ("DIB") and Supplemental Security

Income ("SSI") pursuant to 42 U.S.C. §§ 405(g) and 1381(c)(3).  Plaintiff Brenda Noemi Torres-

Martinez ("Plaintiff") asserts that the Commissioner's decision denying her such benefits --

memorialized in a June 27, 2014 decision of an administrative law judge ("ALJ") -- is not

supported by substantial evidence.  Specifically, Plaintiff alleges that the ALJ erred by failing to

assign controlling weight to a physician's assistant's opinion of her left shoulder impairment.

Plaintiff has moved for judgment on the pleadings (Dkt. No. 18), while the Commissioner has

moved to affirm (Dkt. No. 26).

1

The parties have consented to this court's jurisdiction.  *See* 28 U.S.C. § 636(c); Fed. R.

Civ. P. 73.  For the following reasons, the court will ALLOW the Commissioner's motion to

affirm and DENY Plaintiff's motion for judgment on the pleadings.

I.      PROCEDURAL BACKGROUND

Plaintiff applied for DIB and SSI on June 23, 2009 alleging an onset of disability on

April 1, 2008 (Administrative Record ("A.R.") at 214).  In her applications for DIB and SSI,

Plaintiff alleged that she was disabled due to discogenic and degenerative back disorders (*id*. at

207, 393).  The applications were denied initially and upon reconsideration (*id*.).  Following a

hearing on June 10, 2011, the ALJ issued his decision on April 27, 2012 finding Plaintiff was not

disabled (*id.* at 142, 223).  On April 30, 2013, the Appeals Council remanded the case to the ALJ

for his consideration of Plaintiff's physical impairments based on "[n]ew and material evidence"

showing Plaintiff underwent arthroscopic repair of her left shoulder on December 12, 2012 (*id.* at

184, 230).  The ALJ conducted a second hearing on January 17, 2014 and issued his decision on

June 27, 2014 finding Plaintiff was not disabled (*id.* at 135, 182).  The Appeals Counsel denied

review (*id.* at 1-7), and this appeal followed.

II.      FACTUAL BACKGROUND

Plaintiff completed the twelfth grade (*id.* at 147).  She was employed full-time by Costco

Wholesale ("Costco") for about twelve years as a cashier and shelf stocker (*id.* at 148, 386-87).

In addition, she worked as an aide at a school (*id.* at 149).  She stopped working on April 1, 2008

when she was 40 years old because she was injured while working at Costco and Costco was not

able to accommodate the lifting restrictions recommended by her physician (*id.* at 149-51, 348,

386).

A.    Medical Records

Plaintiff's only challenge to the ALJ's decision is based on his failure to give controlling weight to the opinion of Physician's Assistant ("PA") Mark Dutille of New England Orthopedic Surgeons ("NEOS") regarding Plaintiff's limitations after arthroscopic surgery on her left shoulder on December 12, 2012 (Dkt. No. 19 at 12-19).  Consequently, details of the pertinent medical records, particularly those of NEOS, will be included in the discussion of Plaintiff's objections.

B.    The ALJ Hearings

1.    The June 10, 2011 Hearing

Plaintiff and independent vocational expert ("VE") James Parker testified before the ALJ at the first hearing on June 10, 2011 (A.R. at 142).  Plaintiff testified that she underwent surgery on her right shoulder in June or July 2006 (*id.* at 154).  Her shoulder was painful after the surgery and medication did not provide relief for her post-surgical pain (*id.* at 154, 157-58). Because she used her left arm to compensate for the pain in her right arm, she experienced pins and needles, numbness, and tingling in her left arm and hand, which made it difficult to pick up and hold objects with her left hand, although she was right-handed (*id.* at 154-56).  She also had trouble reaching overhead and getting dressed (*id.* at 159).  However, she drove, cooked, cleaned, shopped, and attended church services three times a week (*id.* at 163-65).

The ALJ first posed the following scenario to the VE for his opinion on whether a hypothetical person could perform Plaintiff's past work as a cashier or any job that existed in the national economy:

> [An individual who is] limit[ed] . . . to light work requiring no more than an occasional
> need to bend, twist, crouch, crawl or kneel.  The individual's right dominant upper
> extremity should be limited to no more than occasional overhead reaching, while the left
> non-dominant upper extremity would be limited to frequent, but less than constant[,]

overhead reaching.  Also, due to an overuse problem, the left non-dominant hand will be limited to frequent, but less than constant[,] fine handling.

This individual should not be exposed to concentrated doses of dusts, fumes, strong odors, temperature or humidity extremes.

(*id.* at 169-70).  In the second hypothetical, the ALJ added the individual's ability to sit for approximately one-third of the day, as needed (*id.* at 170).  The VE indicated that an individual with those limitations would be able perform Plaintiff's past work as a sedentary cashier, and would also be capable of working as a recreation (health club) attendant and a companion (*id.* at 172-74, 222).  However, if unskilled work was added to the light work hypothetical, only the recreation attendant position would be available (*id.* at 175).  If an option to sit or stand at will was substituted for the option to sit for one-third of the day, the following unskilled jobs would be available in the national and regional economy:  sedentary cashier; mall information clerk; answering service operator; and production sorter (*id.* at 172-75).  No jobs would be available for an individual who, three times per month, was late to work, or had to leave early, or was absent (*id.* at 176).

The ALJ ordered Plaintiff's examination by orthopedic and psychological consultants and made his disability determination after receiving their reports (*id.* at 176-77).  The ALJ found that Plaintiff could perform her past relevant work as a cashier and, consequently, was not disabled (*id.* at 222).

2.      The January 17, 2014 Hearing

Plaintiff and VE Larry Takki testified at the second hearing on January 17, 2014 (*id.* at 117, 182).  According to Plaintiff, pain in her upper and lower back, neck, shoulders, and arms, and numbness in her right leg and toes made activities challenging (*id.* at 188-89).  After the June 2011 hearing, she underwent surgery on her left shoulder, which was successful (*id.* at 190-

91).  Although she fell twice after the procedure, she attended physical therapy and her shoulder

was "feeling fine" but her neck began to hurt (*id*. at 191, 197).  She described the constant pain in

her neck as throbbing and like pins and needles (*id*. at 189).  It traveled to her shoulders and her

upper back and, sometimes, to both hands (*id*. at 190).  Her left hand was "constantly getting

numb" (*id*.).  She slept only three to four hours at night because the pain interfered with her sleep

(*id*. at 195).  Cold exacerbated her discomfort (*id*. at 193).  Plaintiff refused cortisone shots

because pain medication did not provide relief (*id*. at 190, 192, 197).  Her physician indicated

that her neck did not require surgery (*id*. at 190).

Plaintiff testified that she could sit for "maybe minutes," but could walk about two blocks

(*id*. at 192-93).  She was able to clean, vacuum, cook, and shop for groceries (*id*. at 194).

During the VE's testimony, the ALJ described his first decision's residual functional

capacity ("RFC") for Plaintiff as follows:

> [A] sedentary exertional level with a sit/stand at will option.  The right dominant upper
> extremity was limited to occasional overhead reach.  The left non-dominant upper
> extremity . . . was limited to frequent, but less than constant overhead reach and also
> frequent, but less than constant fine handling.  This hypothetical per[son] was not to be
> exposed to concentrated doses of dust[], fumes, strong odors, temperature or humidity
> extremes.  And should be limited to one to two-step tasks.

(*id*. at 200).  VE Takki agreed with the first VE's opinion that the jobs of sedentary cashier, mall

information clerk, answering service worker who used a headset at least fifty percent of the time,

and production sorter were available in the national and regional economies for a person with the

restrictions outlined in the RFC (*id*. at 134, 200-01).  The ALJ then posed a second hypothetical

by adding a limitation for turning the head and neck no more than seventy-five degrees in either

direction (*id*. at 201).  According to the VE, the same jobs would be available (*id*. at 201-02).

Those jobs would be also be available to an individual who could be taught by demonstration

with rare changes in routine (*id*. at 202).  In the final hypothetical, the ALJ limited the person to

occasional bilateral fine handling (*id.*).  The VE opined that only the mall information clerk position would be available (*id.* at 202-03).  Finally, the VE testified that no jobs would be available to a person who, at least three times a month, either arrived late, or left early, or was absent (*id.* at 203).

The ALJ indicated that he had requested the opinion of John R. Corsetti, M.D. of NEOS by letter of January 14, 2014 and would made a disability determination after he received it (*id.* at 203, 1122).  After receiving Dr. Corsetti's response to his letter, the ALJ denied Plaintiff's claim on June 27, 2014 (*id.* at 117, 135, 1121).

      C.      <u>The ALJ's Decision</u>

In order to qualify for DIB, a claimant must demonstrate that she was disabled within the meaning of the Social Security Act (the "Act") prior to the expiration of her insured status.  *See* 42 U.S.C. § 423(a)(1)(A), (D).  SSI benefits, on the other hand, require a showing of both disability and financial need.  *See* 42 U.S.C. § 1381a.  "Plaintiff's need, for purposes of SSI, and insured status, for purposes of [DIB], are not challenged.  The only question is whether the ALJ had substantial evidence with which to conclude that Plaintiff did not suffer from a disability." *Bitsacos v. Barnhart*, 353 F. Supp. 2d 161, 165-66 (D. Mass. 2005).

The Act defines disability, in part, as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual is considered disabled under the Act

> only if his physical or mental impairment or impairments are of such severity that he is
> not only unable to do his previous work but cannot, considering his age, education, and
> work experience, engage in any other kind of substantial gainful work which exists in the
> national economy, regardless of whether such work exists in the immediate area in which

he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  *See generally Bowen v. Yuckert,* 482 U.S. 137, 146–49 (1987).

In determining whether Plaintiff was disabled, the ALJ conducted the five-part analysis required by the regulations.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a);[1] *see also Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6-7 (1st Cir. 1982) (describing the five-step process).  The claimant has the burden of proof through step four of the analysis.  *See Goodermote*, 690 F.2d at 7.  At step five, the Commissioner has the burden of showing the existence of jobs in the national economy that the claimant can perform notwithstanding impairment(s).  *See id.*  If a hearing officer determines at any step of the evaluation that the claimant is or is not disabled, the analysis does not continue to the next step.  *See* 20 C.F.R. § 416.920.

At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of April 1, 2008 (A.R. at 119).  *See* 20 C.F.R. § 416.971 *et seq.* At step two, the ALJ found that Plaintiff was severely impaired due to "lumbar disc herniation and radiculitis radiating down the left lower extremity; right shoulder bursitis status post-surgical intervention later developing symptoms on the left shoulder and left hand/wrist; bilateral knee pain attributable to patella tilt and chondromalacia patella; and reactive depression" (A.R. at 120).  *See* 20 C.F.R. § 416.920(c).  The ALJ found that Plaintiff's asthma was not severe (A.R. at

---

[1] "Part 404 of Title 20 regulates [DIB], which is available to those who have paid social security taxes for the required period; Part 416 regulates [SSI], which applies if the claimant has not paid the requisite taxes."  *Mills v. Apfel*, 244 F.3d 1, 2 n.1 (1st Cir. 2001).  Because the pertinent regulations "mirror one another," the undersigned refers only to Part 416.  *Id.*

120).  For purposes of step three, however, Plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (*id.*).

Before proceeding to steps four and five, the ALJ assessed Plaintiff's RFC, which the ALJ used at step four to determine whether Plaintiff could do past relevant work and at step five to determine if Plaintiff could do other work.  *See* 20 C.F.R. § 416.920.  "The RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."  Social Security Regulation ("SSR") 96-8p, 1996 WL 374187, at *2 (July 2, 1996).  Put another way, "[a]n individual's RFC is defined as 'the most you can still do despite your limitations.'"  *Dias v. Colvin*, 52 F. Supp. 3d 270, 278 (D. Mass. 2014) (quoting 20 C.F.R. § 416.945(a)(1)).

The ALJ determined that Plaintiff had the RFC to perform sedentary work,[2] with the following limitations:

> the option to sit or stand at will; . . . occasional overhead reaching with the right, dominant upper extremity; . . . frequent but less than constant overhead reaching and fine handling with the left, non-dominant upper extremity; [no] concentrated exposure to dust, fumes, strong odors, temperature or humidity extremes; and . . . simple, 1-2 step tasks.

 (A.R. at 122).

---

[2] The Social Security Administration ("SSA") defines sedentary work as work that " . . . involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).
.

At step four, the ALJ found that Plaintiff was not able to perform any past relevant work (*id.* at 133).  *See* 20 C.F.R. § 416.965.  At step five, the ALJ determined, based on the VE's testimony, that Plaintiff could perform jobs that exist in significant numbers in the national economy taking into account Plaintiff's age, education, work experience, and RFC, and, therefore, Plaintiff was not disabled (A.R. at 133-35).  *See* 20 C.F.R. §§ 416.969, 416.969a.

III.     ANALYSIS

A.     Standard of Review

The District Court may enter a judgment affirming, modifying, or reversing the final decision of the Commissioner, with or without remanding for a rehearing.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  Judicial review "is limited to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence." *Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 655 (1st Cir. 2000).  The court reviews questions of law de novo, but must defer to the ALJ's findings of fact if they are supported by substantial evidence.  *See id.* (citing *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999)).  Substantial evidence exists "'if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the] conclusion.'" *Irlanda Ortiz v. Sec'y of Health & Human Servs.,* 955 F.2d 765, 769 (1st Cir. 1991) (quoting *Rodriguez v. Sec'y of Health & Human Servs.,* 647 F.2d 218, 222 (1st Cir. 1981)). "Complainants face a difficult battle in challenging the Commissioner's determination because, under the substantial evidence standard, the [c]ourt must uphold the Commissioner's determination, 'even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.'" *Amaral v. Comm'r of Soc. Sec.*, 797 F. Supp. 2d 154, 159 (D. Mass. 2010) (quoting *Rodriguez Pagan v. Sec'y of Health & Human Servs.,* 819 F.2d 1, 3 (1st Cir. 1987)).  In applying the substantial evidence standard, the court must be mindful that it

is the province of the ALJ, and not the courts, to determine issues of credibility, resolve conflicts

in the evidence, and draw conclusions from such evidence.  *See Irlanda Ortiz,* 955 F.2d at 769.

That said, the Commissioner may not ignore evidence, misapply the law, or judge matters

entrusted to experts.  *See Nguyen*, 172 F.3d at 35.

      B.    <u>Plaintiff's Objections</u>

Plaintiff objects to the ALJ's failure to give controlling weight to the opinion of PA

Dutille of NEOS regarding Plaintiff's left shoulder impairment (Dkt. No. 19 at 12-19).  In

support of Plaintiff's argument, she includes new medical records that were not presented to the

ALJ (*id.* at 19).  The Commissioner counters that:  (1) a PA is not a treating source whose

opinion is presumptively entitled to controlling weight, and the weight the ALJ accorded to the

PA's opinion was supported by substantial evidence; and (2) even considering the post-hearing

evidence, the Appeals Council did not egregiously err by denying review of the ALJ's decision

(Dkt. No. 27 at 15-17).  *See Mills v. Apfel*, 244 F.3d 1, 5 (1st Cir. 2001).  The court agrees with

the Commissioner and addresses each assertion in turn.

      1.    PA Dutille's opinion regarding Plaintiff's left shoulder impairment was not
          entitled to controlling weight and the ALJ's decision to give it some
          weight is supported by substantial evidence.

Dr. Corsetti performed arthroscopic surgery on Plaintiff's left shoulder to repair a rotator

cuff tear on December 12, 2012 (A.R. at 868-69).  On January 9, 2013, about a month after

surgery, Plaintiff fell onto her left elbow causing "increased pain [in] her [left] arm and difficulty

moving" (*id.* at 886, 879).  On January 25, 2013 -- about two weeks after Plaintiff fell -- PA

Dutille filled out a form indicating that Plaintiff was "medically cleared" to perform "light duty,"

but was restricted to sedentary work "until [her] follow up appointment" and was unable to

frequently lift, push, pull, or carry more than two pounds with her left arm (*id.* at 881).  In

addition, she was limited to minimal use of her left arm at or above the horizontal level, and minimal repetitive use of her left upper extremity in any position (*id.*).  In making the disability determination, the ALJ gave PA Dutille's opinion some weight because PA Dutille was not an acceptable medical source pursuant to the regulations, and because the medical evaluations that post-dated PA Dutille's opinion showed improvements in Plaintiff's left shoulder (*id.* at 128-29). Plaintiff, however, challenges the weight the ALJ assigned to PA Dutille's opinion and contends that PA Dutille was a "treating source" whose opinion was presumptively entitled to controlling weight (Dkt. No. 19 at 12-19).  Plaintiff's contention is wrong.

"[An ALJ] must give controlling weight to the opinion of a 'treating source' when that opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with substantial evidence in the record." *Taylor v. Astrue*, 899 F. Supp. 2d 83, 87 (D. Mass. 2012) (*Taylor I*) (citing 20 C.F.R. § 416.927(c)(2)).  A "treating source" is an "acceptable medical source," as that term is defined by the regulations.  *See* 20 C.F.R. § 416.927(a)(2).  A PA is not included in the regulation's description of an "acceptable medical source."  *See* 20 C.F.R. § 416.913(a).  Instead, a PA is an "other source" whose opinion is not "presumptively entitled to controlling weight." *Taylor v. Colvin*, Civil Action No. 15-30183-KAR, 2016 WL 6778214, at *4 (D. Mass. Nov. 15, 2016) (*Taylor II*).  *See* 20 C.F.R. § 416.913(d)(1) ("other sources" include "[m]edical sources not listed in [§ 416.913(a)] (for example, nurse practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists")).  *See also Anderson v. Colvin*, Civil No. 14-cv-15-LM, 2014 WL 5605124, at *5 (D.N.H. Nov. 4, 2014) ("Only 'acceptable medical sources' can be considered treating sources whose medical opinions are entitled to controlling weight.") (citing SSR 06–03p, 2006 WL 2329939, at *2 (Aug. 9, 2006)).

In assigning PA Dutille's assessment some weight, the ALJ properly considered "the length, nature, and extent of the treatment relationship, the opinion's supportability and consistency with the record as a whole, the treating source's area of specialization, and any other relevant factors to determine the weight the opinion deserves," *Taylor I,* 899 F. Supp. 2d at 87 (citing 20 C.F.R. § 416.927(c)(2)-(6)), and provided "'good reasons'" for assigning some weight to the PA's January 25, 2013 opinion.  *Id.* at 87-88 (citing 20 C.F.R. § 416.927(c)(2)).  *See King v. Astrue*, Civil No. 09-337-P-H., 2010 WL 4457447, at *4 (D. Me. Oct. 31, 2010), *adopted,* Civil No. 09-337-P-H., 2010 WL 4823921 (D. Me. Nov. 22, 2010) ("The administrative law judge fulfilled applicable requirements with respect to the [treating source's] opinion, expressly considering it, explaining the weight afforded to it, and providing adequate discussion to enable a subsequent reviewer to follow his reasoning.").

Although PA Dutille had treated Plaintiff since 2006, the ALJ assigned some weight to PA Dutille's opinion because it came on the heels of Plaintiff's surgery on her left shoulder and a fall onto her left elbow (A.R. at 128-29, 730).  The ALJ's conclusion – that "future [medical] evidence" showed improvement in Plaintiff's left shoulder and was inconsistent with PA Dutille's assessment – is supported by a longitudinal view of the medical evidence (*id.* at 128).  Dr. Corsetti, who performed the arthroscopy of Plaintiff's left shoulder to repair her rotator cuff on December 12, 2012, felt that the "overall quality of the repair [was] excellent" (*id.* at 869).  This assessment was confirmed on December 19, 2012, one week after surgery, when Plaintiff's upper extremity was "neurovascularly intact," her elbow, wrist, and hand moved well, and her grip strength was intact (*id.* at 870).

On February 12, 2013, three weeks after PA Dutille's assessment and about four weeks after Plaintiff fell, her pain was less, her grip strength was intact, and her elbow, wrist, and hand

moved well (*id.* at 878).  Although "[r]esisted cuff strength reproduce[d] pain," the mechanics were intact and her upper extremity was "neurovascularly intact" (*id.*).  PA Dutille recommended conservative care and his report shows that additional surgery was not indicated (*id.* at 878).  *See Perkins v. Astrue*, 648 F.3d 892, 898 (8th Cir. 2011) (recommendation of conservative treatment provided a basis for the ALJ to reject a contrary medical opinion).  Plaintiff was discharged from physical therapy on February 26, 2013 because she was supposed to suspend treatment for only a week, but she never returned (*id.* at 884).  She resumed physical therapy on March 20, 2013, however (*id.* at 1094).  Dr. Corsetti's report of June 5, 2013 indicates that Plaintiff experienced less pain and improved function (*id.* at 129, 876).  The physical examination showed "no deformity, forward flexion to 150, external rotation to 45, internal rotation to the buttock[,] [g]ood mechanics[, and] [m]ild end range irritability" (*id.* at 876).  Dr. Corsetti opined that her soreness was due to "severe stiffness," which would be relieved by stretching (*id.*).  Although Dr. Corsetti expected Plaintiff's pain to subside, he directed her to see him in the late summer or fall if she was still experiencing discomfort (*id.*).  In March 2014, Dr. Corsetti declined the ALJ's post-hearing request for his opinion on Plaintiff's RFC because Dr. Corsetti had not seen Plaintiff since June 5, 2013 (*id.* at 129, 1121-124).  The ALJ could reasonably conclude that Plaintiff's discomfort had subsided based on Dr. Corsetti's June 5, 2013 report and Plaintiff's failure to seek treatment for her left shoulder after that date.  *See Irlanda Ortiz,* 955 F.2d at 769 (administrative law judge permissibly viewed "gaps in the medical record" as evidence and reasonably inferred that "claimant would have secured more treatment had his pain been as intense as alleged").

Moreover, the medical records subsequent to June 2013 support the ALJ's conclusion. On August 7, 2013, when PA Dutille evaluated Plaintiff's right shoulder and neck pain, he observed that her left shoulder was improving (*id.* at 1097).  Plaintiff reported that her shoulders

were doing well on November 8, 2013 (*id.* at 1096).  This assessment was borne out by PA

Dutille's examination which showed that both shoulders had normal range of motion with some

end range discomfort (*id.* at 129, 1096).  Her resisted rotator cuff strength testing was excellent

(*id.*).

      The ALJ's assignment of some weight to PA Dutille's January 25, 2013 opinion is also

buttressed by the ALJ's credibility assessment of Plaintiff's hearing testimony in January 2014.

"The credibility determination by the ALJ, who observed the claimant, evaluated [her]

demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to

deference, especially when supported by specific findings." *Frustaglia v. Sec'y of Health &*

*Human Servs.,* 829 F.2d 192, 195 (1st Cir. 1987).  The ALJ found that Plaintiff's description of

the severity of her pain was without record support (*id.* 132-33).  *See, e.g., Pires v. Astrue*, 553 F.

Supp. 2d 15, 22 (D. Mass. 2008) (if an ALJ finds the claimant's impairments, as demonstrated by

objective medical evidence, reasonably can be expected to cause pain, an ALJ must evaluate

whether the functionally limiting effect of the pain is disabling).  Plaintiff told the ALJ that the

surgery on her left shoulder was successful, her shoulder felt "fine" after the surgery and before

she fell, and she had recovered from the surgery and the fall (A.R. at 191, 197).  But her neck

"got stiff and . . . started hurting" in September or October 2013 (*id.* at 191).  She alleged that the

pain in her neck travelled to her shoulders and, sometimes, to her wrists and hands, which

became numb (*id.* at 190).  The severe pain allegedly prevented her from finding a comfortable

position and from sleeping for more than three or four hours each night (*id.* at 189-92).

However, in addition to PA Dutille's recommendation of conservative care about a month after

Plaintiff fell, and her failure to schedule a follow-up visit with Dr. Corsetti after June 2013,

which were discussed earlier, Plaintiff's daily activities belied her account of debilitating pain

(*id.* at 878, 1121-24).  *Compare Velez v. Sec'y of Health & Human Servs.,* No. 92-2438, 1993

WL 177139, at *6 (1st Cir. May 27, 1993) (per curiam) (ALJ's credibility assessment, based, in

part, upon finding that claimant's allegations "were unsupported by claimant's 'conservative

treatment,'" was entitled to deference); *Perez Torres v. Sec'y of Health & Human Servs.,* 890

F.2d 1251, 1255 (1st Cir. 1989) (holding that a hearing officer may discredit the severity of pain

complaints when claimant did not seek regular treatment for conditions that were amenable to

treatment).  According to Plaintiff, she was able to walk two blocks, vacuum, clean, cook, and

shop (*id.* at 194).  *See Johnson v. Colvin*, CIVIL ACTION NO. 13-40003-TSH, 2016 WL

4639134, at *9 (D. Mass. Sept. 6, 2016) (plaintiff's report of her activities of daily living

undermined a treating source's opinion); *Teixeira v. Astrue,* 755 F. Supp. 2d 340, 347 (D. Mass.

2010) ("While a claimant's performance of household chores or the like ought not be equated to

an ability to participate effectively in the workforce, evidence of daily activities can be used to

support a negative credibility finding.").

The ALJ considered PA Dutille's opinion and adequately articulated the reason for

assigning it some weight.  Plaintiff's RFC's limitations on overhead reaching and fine handling

with her left hand accommodated her left shoulder impairments (A.R. at 122, 133).  "Taken as a

whole, the evidence on which the ALJ relied, including medical records and Plaintiff's accounts

of [her] daily activities, can be viewed as corroborating Plaintiff's ability to engage in [sedentary

work] with the additional restrictions imposed by the ALJ in his RFC assessment."  *Halla v.

Colvin*, Case No. 15-cv-30021-KAR, 2016 WL 234802, at *4 (D. Mass. Jan. 20, 2016).

      2.     Post-hearing evidence does not warrant remand to the Appeals Council.

In support of her argument that the ALJ should have afforded PA Dutille's January 25,

2013 opinion controlling weight, Plaintiff relies on evidence that was not submitted to the ALJ,

but was submitted to the Appeals Council (Dkt. No. 19 at 19, citing A.R. 49-51, 56-58, 72-75, 95-96, 97-100; A.R. 2).[3]  The Commissioner correctly maintains that, in reviewing the ALJ's decision, this court is not permitted to consider the evidence that was not before him (Dkt. No. 27 at 15-16).  *See Saenz v. Colvin,* 61 F. Supp. 3d 195, 205 (D. Mass. 2014) ("It is well-established that when reviewing the ALJ's decision, the [c]ourt should not consider additional evidence that was never presented to the ALJ.").  *Accord Mills,* 244 F.3d at 4.  The records that the ALJ did not consider can be used for a limited purpose:  to determine whether the Appeals Council's refusal to review the ALJ's decision was an "egregious[] mistake[]."  *Id.* at 5.

Plaintiff submitted the following additional evidence to the Appeals Council, which, she argues, supports her position that the ALJ should have assigned controlling weight to PA Dutille's opinion of her limitations based on the condition of her left shoulder in January 2013: Baystate Mason Square Neighborhood Health ("Baystate Health") records of July 29, 2013, January 23, 2014, September 23, 2014, October 16, 2014, and November 20, 2014; and R. Scott Cowan M.D.'s report of January 8, 2014 (Dkt. No. 19 at 19; A.R. at 2, 49-51, 56-58, 72-75, 88, 95-100).[4]  Because the regulations limited the Appeals Council's review to the additional medical reports with dates prior to the ALJ's decision, the Appeals Council divided these records into two groups:  the reports of treatment provided before the ALJ's decision on June 27, 2014; and those from after that date (*id.* at 2).  *See* 20 C.F.R. § 416.1470(a)(5) ("The Appeals Council will review a case if . . . the Appeals Council receives additional evidence that is new, material, and *relates*

---

[3] Plaintiff does not contend that these records qualify as "new evidence" which would entitle her to have the ALJ consider them on remand.  *See Evangelista v. Secretary of Health and Human Servs.,* 826 F.2d 136, 139 (1st Cir. 1987) (citing 42 U.S.C. § 405(g)).

[4] Because Plaintiff challenges only the ALJ's treatment of PA Dutille's opinion of Plaintiff's left shoulder limitations, the court does not address the additional records that were submitted to the Appeals Council that are not related to this issue.

*to the period on or before the date of the hearing decision*, and there is a reasonable probability that the additional evidence would change the outcome of the decision.") (emphasis added).  The Appeals Council denied Plaintiff's request to review the ALJ's decision, concluding there was no "reasonable probability" that the additional records, when considered with the totality of the other record evidence that the ALJ considered, would have changed the ALJ's decision (A.R. at 2).

This court's review is limited to determining whether the Appeals Council's conclusion constitutes "an explicit mistake of law or other egregious error" (A.R. at 2).  *Anderson v. Colvin*, CIVIL ACTION NO. 15-10480-IT, 2016 WL 2605093, at *1 (D. Mass. Mar. 9, 2016).  "This avenue of review has been described as 'exceedingly narrow.'"  *Kirby v. Astrue*, No. C.A. 07-422A, 2008 WL 2787926, at *10 (D.R.I. July 17, 2008) (quoting *Harrison v. Barnhart*, Civil Action No. 06-30005-KPN, 2006 WL 3898287, at *2 (D. Mass. Dec. 22, 2006)).  "Thus, a claimant can only prevail on a challenge to such a decision if she can show 'that the Appeals Council was "egregiously mistaken" in its decision to deny [her] request for review.'"  *Anderson*, 2016 WL 2605093, at *6 (quoting *Kirby*, 2008 WL 2787926, at *11).

Plaintiff fails to meet her substantial burden because none of the additional records showed impairment of Plaintiff's left shoulder and none of the additional treatment providers opined that Plaintiff was disabled or unable to work.  On July 29, 2013, Jason M. Luszcz, PA of Baystate Health, examined Plaintiff's right shoulder and recommended "conservative treatment including rest, heat application vs. ice, and a[n] anti-inflammatory and/or muscle relaxant" pending an orthopedic examination (A.R. at 49).  *See Rodriguez-Gonzalez*, 854 F. Supp. 2d 176, 186 (D.P.R. 2012) (conservative treatment supported the ALJ's determination that plaintiff was not disabled).  Dr. Cowan, PA Dutille's colleague at NEOS, examined Plaintiff on January 8,

17

2014 in response to her complaints of neck pain (*id.* at 88).  Dr. Cowan reported that her

shoulder examination was "benign," her upper extremity motor groups scored 5 out of 5, and her

sensation was intact distally (*id.*).  The radiological images of Plaintiff's neck, including an MRI,

showed degenerative disc condition at the C5-7 level, but "no significant radicular symptoms or

findings, and no significant nerve root impingement [was] identified" (*id.*).  Dr. Cowan stated

that "aggressive care" was not indicated and Plaintiff was not interested in management through

injections (*id.*).  *See Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988)

(plaintiff's failure to follow prescribed treatment undercut his credibility regarding his functional

limitations); 20 C.F.R. § 416.930(a) (claimant must follow prescribed treatment in order to

receive benefits).  On January 23, 2014, Plaintiff visited Baystate Health complaining of

shoulder and neck pain and headaches (*id.* at 56).  Nurse Practioner Denise Finn-Rizzo's physical

examination showed Plaintiff had limited range of motion in her neck, but her gait and

coordination were within normal limits, and her motor strength was 5/5 (*id.* at 57-58).  Finn-

Rizzo referenced Dr. Cowan's assessment, referred Plaintiff to physical therapy, prescribed

amitryptiline, and recommended warm heat and stretching to relieve the muscular tension and

spasm in her neck that was causing the pain and headaches (*id.* at 58).  On September 23, 2014,

Samuel H. Borden, M.D. examined Plaintiff's right shoulder at Baystate Health (*id.* at 72).[5]

Plaintiff's gait was within normal limits and her neck was supple (*id.* at 74).  Dr. Borden

considered Dr. Cowan's evaluation and referred Plaintiff to Julio Martinez-Silvestri, M.D. for

discussion of "other options" for Plaintiff's right shoulder pain because she was not "amenable to

long-term [use of] narcotics" (*id.* at 74).  The providers' recommendations for conservative care

---

[5] Because this record post-dated the ALJ's decision, the Appeals Counsel was not required to consider it.  *See* 20 C.F.R. § 416.1470(a)(5).  Consequently, Plaintiff got more than that to which she was entitled.

and Plaintiff's refusal to comply with treatment recommendations for pain, along with the evidence that the ALJ analyzed, undercut Plaintiff's contention that the Appeals Council erred by denying review.

Based on the records that the Appeals Council considered, this court cannot conclude that the Appeals Council was egregiously mistaken in finding that the ALJ's decision regarding Plaintiff's left shoulder would not have been altered by the additional evidence. *See Anderson*, 2016 WL 2605093, at *6.

V.    CONCLUSION

For the reasons stated above, Plaintiff's motion for judgment on the pleadings (Dkt. No. 18) is DENIED, and the Acting Commissioner's motion to affirm the decision (Dkt. No. 26) is GRANTED.  The case will be closed.

It is so ordered.

Dated:  March 21, 2017                                   /s/ Katherine A. Robertson
                                                        KATHERINE A. ROBERTSON
                                                        United States Magistrate Judge